CASE 27—PROCEEDING BY F. H. ALLEN, &C., AGAINST W. J. HOPSON, &C., TO ABOLISH GATES ERECTED ON THE PUBLIC HIGHWAY.—DEC. 7.

## Allen, &c. v. Hopson, &c.

APPEAL FROM TRIGG CIRCUIT COURT—THOS. P. COOK, CIRCUIT JUDGE.

FROM A JUDGMENT OF THE CIRCUIT COURT ON APPEAL FROM THE COUNTY COURT DENYING RELIEF THE PLAINTIFFS APPEAL. AFFIRMED.

HIGHWAYS—ERECTION OF GATES—REMOVAL—POWERS OF COUNTY COURT —EVIDENCE—COMPENSATION.

1  The power of the county courts to abolish gates erected across a road under Kentucky Statutes, 1903, section 4297, authorizing such action after ten days' notice to the occupant of the premises, is limited to cases in which the gates were originally erected by permission of the county court under the provisions of said section and section 4289, providing for applications for the privilege of erecting gates across roads.

2. In proceedings to abolish gates erected across a road under

Kentucky Statutes 1903, section 4297, authorizing such action on the part of the county court as to gates erected by its permission, uncontradicted evidence that the gates were erected when the road was established and had been maintained for thirty years or more without objection, created a strong presumption that when the road was established the landowner granted the right of way upon the condition that he was to be permitted to erect and maintain the gates.

3. In proceedings under Kentucky Statutes 1903, section 4297, authorizing the county court to abolish gates erected across a road by its permission, the best evidence of an agreement between the viewers who laid out the road and the landowner that the latter should have the right to maintain gates across the road was the report of the viewers to the county court, and, in the absence of evidence showing the destruction or loss of such report, or of evidence that the agreement was not reduced to writing, parol proof of such agreement was inadmissible.

4. The heirs of one who, in surrendering to the public a right of way through his land, reserved the right of erecting gates across the same can not be deprived of that right in a proceeding under Kentucky Statutes 1903, section 4297, providing for the removal of gates established across a road by permission of the county court, but are entitled to be compensated for their loss under section 4292, providing for the assessment of damages for land taken in laying out or altering a road.

5. A proceeding under Kentucky Statutes 1903, section 4297, to abolish gates erected across a public road, in which the relief sought is denied on the ground that the gates were not shown to have been erected under permission of the county court, and hence within the scope of the proceedings, is no bar to another proceeding brought for the same purpose, if the road was in fact erected by permission of the county court.

SIMS & THOMAS' AND J. C. DABNEY, ATTORNEYS FOR APPELLANTS.

The record shows that a public road was established in this county from Cumberland church to Canton in July, 1869, and has existed ever since, across which appellee, W. J. Hopson, and his father before him have erected and maintained gates for their own use and convenience ever since the road was established. There is nothing, however, in the record conferring any easement, franchise or privilege on any one to erect or maintain gates across said road.

1. We suggest that no easement, privilege or franchise inhering in or placing a charge on land for a period longer than one year can be created by parol contract. Barnes v. Beverly, 17 R., 586;

Mt. Sterling, &c., Turnpike Co. v. Barry, 18 R 937; Butt v. Napier, 14 Bush, 39.

2. The court below erred in permitting witnesses to testify to conversations between Joshua Hopson and the alleged commissioners that opened the road, (1) because there was no competent proof that Joshua Hopson was at that time the owner of the land; (2) there was no proof that the alleged commissioners were ever appointed by the Trigg county court, or were authorized to negotiate with Hopson for the establishment of the road or the erection of the gates; (3) there was no evidence to show that the alleged commissioners ever reported their acts to the court or that the court ever ratified or approved any of their acts; (4) if said reputed commissioners made any contract with Joshua Hopson, it was in parol and is condemned by the statute of frauds; and for these reasons said evidence was incompetent.

3. The only condition precedent to the abolition of gates legally placed across a public road is the promotion of the public good.

4. The maintaining of these gates is for the personal gain and convenience of appellee, and not for the public good.

5. The instructions of the court to the jury were erroneous and misleading, and were not authorized by any evidence, written or parol, tending to show any authority to Joshua Hopson or any one to erect or maintain these gates.

JOHN W. KELLY and R. A. BURNETT, attorneys for appellee.

1. We submit that the evidence conclusively shows that the public good does not require the removal or abolition of these gates, but, on the contrary, that it is better for the public that the gates remain as they are.

2. The evidence further shows that at the time the road was established Joshua Hopson then owned the farm through which it ran, and only consented to give the road upon the condition that he have the right and privilege of putting up and keeping up two gates where it entered and left his farm, which was agreed to by the commissioners appointed to establish the road.

3. We contend that the gates having been erected and maintained by the appellee and those under whom he claims for more than thirty years, which claim has been accepted and recognized by the county and the community interested therein, he is entitled to maintain them.

### AUTHORITIES CITED.

Ky. Stat., secs. 4297, 4298; Civil Code, sec. 606, subsec. 2; 11 B. Mon., 163; 5 Bush, 405; 7 Bush, 471; 79 Ky., 323.

OPINION OF THE COURT BY JUDGE NUNN, AFFIRMING.

It appears from the record that in the year 1869 a new road was established leading from Canton to Cumberland church, in Trigg county. This new road was established through the lands of appellees a distance of 1 1-4 miles; Joshua Hopson, the father of appellees, then being the owner of this land. This proceeding was instituted in the Trigg county court, under section 4297 of the Statutes of 1903, to cause the court to abolish two gates. It appears these gates were erected at the time of the establishment and opening of the road at the points of entering and leaving Hopson's lands. The appellants proceeded upon the theory that the public good required the removal of these gates. The appellees made an issue with appellants, and contended that the public was benefited by the gates, rather than injured; that this road through their farm was in the Cumberland river bottom, which, to a great extent, was overflowed each year by the waters from that river; that if the gates were abolished, and fences erected on each side of the road, driftwood would accumulate and mudholes would be formed in the lane, which would make it inconvenient and injurious to the traveling public; that with the gates and fences to catch the driftwood and confine the public to the roadway, the traveling public would be interfered with; that the gates were not kept closed except during the crop season, and also in granting the right of way for public use the right to erect and maintain the gates was reserved by Hopson when he granted the roadway to the use of the public. On the other hand appellants show that the gates inconvenienced the public to a great extent; that persons traveling the road are compelled to stop, and much of the time to alight from their horses or vehicles and open the gates, and during the crop season in driving stock to market along this road the owners

were put to the expense of employing additional hands to drive the stock through appellees' farm to avoid injury to the crops and the loss of the stock. On this proof the county judge ordered the gates abolished. On an appeal to the circuit court and a trial by jury it found a verdict in favor of appellees. The evidence of appellants is silent on the question as to how and by what authority these gates were erected. It was not shown that the gates were permitted by the county court to be erected under the provisions of the statutes. By section 4297, Ky. St., 1903, it is provided: "The county court may, after the occupant of the premises upon which gates shall be erected across a road has had ten days previous notice of the proceeding . . . order the gates repaired, removed, or abolished, if the public good requires it." This provision of the statute is the same, in substance, as contained in the statute in existence when this road was established. This statute authorizes the county court, on certain conditions named therein, to remove or abolish gates which the county court had permitted by order to be erected by virtue of sections 4289 and the first part of 4297 of the statute. The power and authority of the county court under section 4297 to remove or abolish gates depends upon the fact as to whether the gates were erected by permission of the county court under the provisions of sections 4289 and 4297. If not so erected, the court can not abolish them by proceedings under section 4297. If a person without any authority should obstruct the public road by the erection of gates, he could be punished therefor under section 1241 of the statute, or by indictment for the creation and maintenance of a nuisance. Under such a state of case it could not be contended that the wrongdoer should be proceeded against under section 4297, and have the county court to make an order abolishing the gates for the public good. In

such state of case, in addition to a fine, which might be imposed, any citizen might remove the obstruction—i. e., the nuisance—from the public highway, if it could be done without committing a breach of the peace. The appellants failed to prove that the gates were erected across this road by permission and order of the county court by virtue of the sections referred to, and the proof without any contradiction shows that the gates were erected at the time the road was established, and have been maintained for a term of 30 years or more without interference or objection until this proceeding was instituted. These circumstances create a strong presumption that when the road was established the owner granted the right of way upon the condition that he was to be permitted to erect and maintain these gates. The appellees introduced two witnesses, who stated that they were present in 1869 when the viewers were performing their duties in reference to the establishment of this road, and heard the agreement between them and Joshua Hopson, the farther of appellees; that Hopson agreed to and did give the right of way for the road without any charge, reserving the right to erect and maintain the gates; that the viewers accepted this proposition. This evidence was objected to, but the court overruled the objection. This evidence was not competent. There was no proof that this agreement was not reduced to writing. The presumption is that the viewer's report to the county court contained this agreement. If so, it was the best evidence, and should have been introduced, if in existence, or within their power to produce it. There was no evidence showing the destruction or loss of this report, or the papers connected with the application to open and establish this road. If appellees' father in surrendering to the public this right of way through his land reserved the right and privilege of erecting and maintaining these gates,

then they can not be removed, and the appellees be deprived thereof, in a proceeding like this.   In such a case the owners of the land are entitled to be compensated for their loss by virtue of section 4292 of the statutes.  It would be inequitable and unjust to a landowner to obtain from him land from which to establish a road, and to avoid the necessity of erecting and maintaining two strings of fence he gives the land without charge upon the condition that he be permitted to erect and maintain gates, and, after the road is established, then institute proceedings in the county court under section 4297 and abolish the gates, thus obtaining the land from the owner without any compensation.   This would be a species of wrongdoing that was never intended or contemplated by the General Assembly, when enacting the statute. As stated, this section was only intended to authorize the county court to abolish gates when they have been erected by permission of the county court under the section named.   It does not appear that appellees were permitted by the county court to erect these gates under the statute, but the presumption from all the evidence and circumstances shown in the record is that Hopson, in granting the land to the public, reserved the right to erect and maintain these gates.  If it be the fact that the county court did grant the right to erect the gates under the statute stated, this proceeding would not be a bar to another proceeding under section 4297 to abolish them.

Wherefore the judgment of the lower court is affirmed.